**IT IS ORDERED as set forth below:**

**Date: September 30, 2022**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-68798-JWC |
| ANTWINETTE BELINTHA GRIER, | CHAPTER 7 |
|     Debtor. | |
| ROBERT TRAUNER, Chapter 7 Trustee for the Estate of Antwinette Belintha Grier, | |
|     Plaintiff, | |
| v. | ADV. PRO. NO. 20-6043-JWC |
| CALIBER HOME LOANS, INC., | |
|     Defendant. | |

## <u>Memorandum Opinion and Order</u>

The question before the Court is whether a chapter 7 trustee can avoid a bank's security

deed on a debtor's home.  It is a common question in chapter 7 bankruptcy cases that often requires

convoluted and technical analysis of the security deed, various documents executed therewith, signature pages, notary stamps, and state recording law.  This case would be no different if not for a recent Eleventh Circuit ruling, *Pingora Loan Servicing, LLC v. Scarver (In re Lindstrom)*, 30 F.4th 1086, 1091 (11th Cir. 2022), which provides a clear answer to a thorny question under Georgia's recording statutes.  The question:  if an official witness signs an acknowledgement of a security deed instead of an attestation,[1] can the defect be cured by a separate affidavit of the official witness pursuant to O.C.G.A. § 44-2-18 (the "Curing Statute")?  The *Lindstrom* decision clearly answers, "No."  When an official witness does not attest the security deed in the first place, the witness is not a "subscribing witness" as required by the Curing Statute, and the subsequent affidavit does not satisfy the requirements of the Curing Statute.  Because the official witness in this case did not attest the security deed, the official witness is not a subscribing witness, and the subsequent affidavit of such non-subscribing witness does not satisfy the Curing Statute.  The Court also concludes that the subsequent affidavit is not itself an attestation of the security deed. The chapter 7 trustee, therefore, can avoid the security deed.

## I.    PROCEDURAL POSTURE

Robert Trauner is the chapter 7 trustee ("Trustee") in this bankruptcy case.  He filed this adversary proceeding to avoid the Deed to Secure Debt (or the "Security Deed") on the debtor's house in favor of defendant Caliber Home Loans, Inc. ("Caliber").  Trustee asserts three counts in his complaint: count I requests avoidance of the Security Deed pursuant to 11 U.S.C. § 544(a)(3);

---

[1]  "[A]n *attestation* is 'the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact.'  Put differently, to attest a deed means to see it signed and then add one's own signature as a declaration of that fact."  *Pingora Loan Servicing, LLC v. Scarver (In re Lindstrom)*, 30 F.4th 1086, 1090 (11th Cir. 2022) (citations omitted).  Acknowledgement "is 'the act of a grantor in going before some competent officer and declaring the paper to be his deed.'  To prove an acknowledgment, 'the certificate of the officer that it has been made' must be added to the deed."  *Id.* (citations omitted).

count II requests recovery from Caliber pursuant to 11 U.S.C. § 550(a); and count III requests

preservation of the avoided transfer pursuant to 11 U.S.C. § 551.

Three motions are before the Court:

1) Trustee's Motion for Partial Summary Judgment (Doc. No. 10) seeking summary judgment on count I of the complaint to avoid Caliber's lien;

2) Caliber's Cross-Motion for Summary Judgment (Doc. No. 18) seeking summary judgment on all counts in the complaint; and

3) Caliber's motion to substitute defendant (Doc. No. 16) ("Motion to Substitute") seeking to substitute Freedom Mortgage Corporation as the defendant because it is the current owner of the Security Deed.

The cross-motions for summary judgment are mutually opposed.  Trustee opposes the Motion to

Substitute because he may have different remedies against Freedom Mortgage, and Freedom

Mortgage may have different defenses than Caliber.  The Court first addresses the cross-motions

for summary judgment and then addresses the Motion to Substitute.

## II.   <u>JURISDICTION</u>

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

This is a core proceeding under 28 U.S.C. § 157.

## III.   <u>FINDINGS OF FACT</u>

The material facts are undisputed.  The debtor and her spouse (the borrowers) executed the

Security Deed in favor of Caliber[2] in 2017.[3]  The closing attorney, a notary public, signed the

signature page of the Security Deed following these words:

On this the 23rd day of October, 2017, before me, Jennifer Hardy, the undersigned officer, personally appeared [the borrowers], known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed

---

[2] MERS is the grantee as nominee for Caliber, and Caliber transferred the Security Deed to Freedom Mortgage in May of 2020.  For ease of reference, this opinion generally refers to Caliber as the holder of the Security Deed.

[3] It is not disputed that the borrowers validly executed the Security Deed, that an unofficial witness attested it, or that the Security Deed is valid between the borrowers and Caliber.

> to the within instrument, and acknowledged that he/she/they executed the
> same for the purposes therein contained.  In witness whereof, I hereunto set
> my hand and official seal.

Caliber recorded the Security Deed in the Gwinnett County real property records beginning at page 84 of Deed Book 55501 (the "Deed Book").  The borrowers also executed a "Waiver of Borrower's Rights," which appears in the Deed Book seven pages after the signature page of the Security Deed.  The closing attorney also signed a "Closing Attorney's Affidavit," which appears on the next page of the Deed Book following the Waiver of Borrower Rights.  The Closing Attorney's Affidavit reads, in pertinent part:

> In closing the above loan, but prior to the execution of the Deed to Secure
> Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed
> and explained to the Borrower(s) the terms and provisions of the Deed to
> Secure Debt and particularly the provisions thereof authorizing the Lender
> to sell the secured property by a nonjudicial foreclosure under a power of
> sale, together with the "Waiver of Borrower's Rights" . . . .  After said
> review with and explanation to Borrower(s), Borrower(s) executed the Deed
> to Secure Debt and "Waiver of Borrower's Rights."

It is undisputed that the closing attorney's signature on the Security Deed's signature page is an acknowledgement of the borrower's signatures instead of an attestation.  The question is whether the language of the Closing Attorney's Affidavit cures the lack of attestation on the Security Deed.

## IV.    CONCLUSIONS OF LAW

### A.    Standard of Review

The standard for summary judgment is set forth in Federal Rule 56, applicable here through Bankruptcy Rule 7056.  Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179 (11th Cir. 2002).  Both parties submit, and the Court agrees, there are no material facts in dispute and summary judgment is appropriate.

### B.     The Security Deed Is Avoidable

Georgia law requires security deeds to be attested by an official witness to be eligible for recordation—mere acknowledgement does not cut the mustard.  O.C.G.A. §§ 44-2-14; 44-14-33; and 44-14-61.[4]  If a security deed is not attested by an official witness, then it is patently defective, does not provide constructive notice to a bona fide purchaser even if recorded, and may be avoided by a chapter 7 trustee using the strong-arm powers under 11 U.S.C. § 544.  *See Lindstrom*, 30 F.4th 1091 ("No one disputes that the deed was missing the required attestation by an official. As a result, the trustee can "avoid" the deed unless the loan companies find a way to save it."); *see also U.S. Bank, N.A. v. Gordon,* 289 Ga. 12, 709 S.E.2d 258 (2011); *Gordon v. Wells Fargo, N.A. (In re Knight)*, 504 B.R. 668 (Bankr. N.D. Ga. 2014) (J. Hagenau).

The relevant facts at hand are identical to the relevant facts in *Lindstrom*:  a closing attorney, acting as an official witness, signed an acknowledgment of a debtor's signature on a security deed instead of an attestation.  Like in *Lindstrom*, the Security Deed is avoidable by Trustee unless Caliber finds a way to save it.  Caliber attempts to save the Security Deed with two arguments.

The first argument is the precise issue before the Eleventh Circuit in *Lindstrom*.  Just like the lenders in *Lindstrom*, Caliber relies on O.C.G.A. § 44-2-18 (the Curing Statute) to argue the

---

[4] Georgia law allowed for either attestation or acknowledgement by an official witness until the law was amended in 2015.  The transaction here took place in 2017, well after the change in Georgia law.

Closing Attorney's Affidavit cured the attestation defect.  The Curing Statute provides:

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44-2-15 and shall testify to the execution of the deed and its attestation according to law. A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

O.C.G.A. § 14-2-18.   Caliber argues the Closing Attorney's Affidavit is the affidavit of a subscribing witness testifying to the execution and attestation of the Security Deed.

Prior case law from the Eleventh Circuit and Georgia Bankruptcy Courts supported Caliber's position.  *See Gordon v. Terrace Mortg. Co. (In re Kim)*, 571 F.3d 1342 (11th Cir. 2009); *In re Perry*, 565 B.R. 442 (Bankr. M.D. Ga. 2017).  In both cases, the courts relied on the Curing Statute to find closing attorneys' affidavits similar or identical to the Closing Attorney's Affidavit in this case cured an attestation defect of an official witness.  Unfortunately for Caliber, the more recent *Lindstrom* decision foreclosed Caliber's ability to rely on the Curing Statute under the facts of this case.  In *Lindstrom*, the Eleventh Circuit makes clear the term "subscribing witness" in the Curing Statute means someone who attested the security deed in the first place.  *Lindstrom*, 30 F.4th at 1094 ("the only way to qualify as a subscribing witness is to attest the deed itself").  Because the closing attorney in *Lindstrom* merely acknowledged the security deed instead of attesting it, he did not qualify as a subscribing witness, and the closing attorney's affidavit could not satisfy the requirements of the Curing Statute.  *Id*.  Just like in *Lindstrom*, the closing attorney in this case acknowledged the Security Deed instead of attesting it, she therefore is not a subscribing witness, and the Closing Attorney's Affidavit cannot satisfy the requirements of the Curing Statute.

Caliber attempts to salvage its position in the wake of *Lindstrom*[5] by arguing the language of the Closing Attorney's Affidavit is materially different than the affidavit in *Lindstrom* and substantially identical to the affidavit in the Eleventh Circuit's decision in *Kim*. Therefore, Caliber argues, *Kim* controls this case. The Court acknowledges the language of the Closing Attorney's Affidavit more closely tracks the language of the affidavit in *Kim* than *Lindstrom*, but Caliber makes the wrong factual distinction.

The relevant distinction between this case, *Lindstrom*, and *Kim* is that the closing attorneys in this case and *Lindstrom* did not attest the security deeds and are not subscribing witnesses under the Curing Statute, whereas there was no apparent dispute that the closing attorney in *Kim* attested the security deed and qualified as a subscribing witness.[6] Without any apparent dispute that the closing attorney was a subscribing witness, the *Kim* decision analyzed whether the substance of the closing attorney's affidavit sufficiently testified to the attestation of the security deed. *In re Kim*, 571 F.3d at 1346. In *Lindstrom*, the Eleventh Circuit did not address the substance of the closing attorney's affidavit *at all*. Further, even though *Lindstrom* cites to *Kim* for the proper standard of review on appeal and was clearly aware of the *Kim* decision, *Lindstrom* does not mention *Kim* again or its substantive analysis of the contents of the closing attorney's affidavit.[7] The Court's takeaway from the *Lindstrom* panel's decision to eschew any discussion of *Kim* and the substance of the affidavits is that *Lindstrom* found them irrelevant because the closing attorney did not satisfy the threshold requirement of being a subscribing witness. *See Lindstrom*, 30 F.4th

---

[5] The parties initially briefed their summary judgment motions prior to the *Lindstrom* ruling. The Court stayed this case pending a ruling in *Lindstrom* and requested supplemental briefs after the decision issued.

[6] The defect at issue in *Kim* was the failure to include the closing attorney's notary stamp on the attestation page, not a failure to attest the security deed. *Kim*, 571 F.3d at 1344. The *Kim* decision does not address the definition of subscribing witness or engage in any discussion or analysis of whether the closing attorney in that case qualified as a subscribing witness.

[7] Indeed, Caliber cites the lower-court *Lindstrom* decisions in support of its suggested factual distinction because the facts Caliber seizes upon appear nowhere in the Eleventh Circuit's opinion.

at 1094 ("Although subscribing witnesses must also produce a sufficient affidavit to satisfy the remedial statute, the only way to qualify as a subscribing witness is to attest the deed itself.  The closing attorney did not.  So he is not a subscribing witness, and the loan companies' attempt to save the deed fails.").

Like in *Lindstrom*, Caliber's closing attorney does not satisfy the threshold requirement of being a subscribing witness; like in *Lindstrom*, the Court need not address whether the Closing Attorney's Affidavit otherwise satisfies the requirements of the Curing Statute.  To apply the reasoning of *Kim* and analyze the substance of the Closing Attorney Affidavit in this case would circumvent the ruling in *Lindstrom* by applying the Curing Statute in the absence of a subscribing witness.  "Because the closing attorney whose signature [Caliber] rel[ies] on did not attest the deed, [it] has not produced an affidavit by a subscribing witness as required by" the Curing Statute. *Lindstrom*, 30 F.4th at 1094.  Caliber's attempt to save the Security Deed with the Curing Statute fails.

Perhaps acknowledging that *Lindstrom* foreclosed the application of the Curing Statute, Caliber's second argument to save the Security Deed is that the Closing Attorney's Affidavit is itself an attestation of the Security Deed incorporated into the Security Deed.  In other words, there is no need to resort to the Curing Statute to save the Security Deed because there is no attestation defect.  Trustee argues the Closing Attorney's Affidavit is not incorporated into the Security Deed and, even if it were, the language of the Closing Attorney's Affidavit does not satisfy the requirements of attestation.  The Court need not determine whether the Closing Attorney's Affidavit is incorporated into the Security Deed because it agrees with Trustee that the Closing Attorney's Affidavit is not an attestation of the Security Deed.

The language of the Closing Attorney's Affidavit provides,

> In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt . . . After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

This language does not certify that the closing attorney witnessed the borrowers execute the Security Deed, only that it was executed at some point after her review of the documents with the borrowers. In short, it is not an attestation. This conclusion follows other decisions of this Court previously rejecting banks' arguments that identical language in a closing attorney's affidavit was an attestation of a security deed. *In re Knight*, 504 B.R. at 672; *Gordon v. OneWest Bank, FSB (In re Blackmon)*, 509 B.R. 415, 420 (Bankr. N.D. Ga. 2014) (J. Murphy).

Caliber cites again to *Kim* in support of its incorporation argument. While Caliber attempts to distinguish this argument from its Curing Statute arguments, the reliance on *Kim* only underscores that Caliber's incorporation argument is really another argument that the Curing Statute should apply. Though *Kim* relied to some degree on findings that the closing attorney's affidavit was incorporated into the terms of the security deed and sufficiently testified to the attestation of the security deed, it was in the context of analyzing whether the substance of the closing attorney's affidavit complied with the Curing Statute and its remedial language allowing "substantial compliance." *See Kim*, 571 F.3d at 1347 ("we believe that our decision is in full compliance with the remedial purpose of § 44-2-18"). As Judge Hagenau concluded in *Knight*, the ruling in *Kim* was that "the attorney's affidavit substantially complied with the requirement for a subscribing witness affidavit. The [Eleventh Circuit] did *not* rule that the attorney affidavit was an attestation of the deed itself." *In re Knight*, 504 B.R. at 673. The Court agrees with Judge

Hagenau's conclusion.[8] *Kim* applies to analysis of a subscribing witness affidavit under the Curing Statute, not the independent question of what is or is not an attestation. Again, applying the reasoning of *Kim* outside of the context of the Curing Statute would give Caliber the benefit of that statute even though, pursuant to *Lindstrom*, it has not satisfied the requirements of that statute. The Court rejects Caliber's incorporation argument.

Caliber also poses the policy argument that Trustee's position is hyper-technical when no one disputes the Security Deed is valid between the borrowers and Caliber. There may be some merit to that position, but it is equally true that "it costs nothing for lenders or their agents to review their paperwork to make sure the proper signatures are in place before submitting documents to the superior court for recording." *In re Codrington,* 292 Ga. 474, 749 S.E.2d at 370 (citing *U.S. Bank N.A. v. Gordon,* 289 Ga. 12, 17, 709 S.E.2d 258, 262 (2011)). The Security Deed was executed in 2017, over a year after Georgia law no longer allowed acknowledgement of security deeds. At some point mortgage lenders must insist that closing attorneys conform their practices to satisfy the requirements of Georgia law, however technical, so they can spend fewer resources insisting that courts conform the requirements of Georgia law to mirror the practices of closing attorneys or lenders who fail to update their forms. The Security Deed was patently defective according to the laws of Georgia at the time the Security Deed was executed and recorded, "and no amount of *ex post facto* justifications avoid the clear result of [*Lindstrom*]." *In re Blackmon*, 509 B.R. at 421. Trustee's Motion for Partial Summary Judgment will be granted as to Count I, and Caliber's Cross-Motion for Summary Judgment will be denied.

---

[8] Although *In re Knight* and *In re Blackmon* both involved unofficial witness attestations, and although the decisions discuss their distinction from *Kim* being one of unofficial v. official witnesses, the underlying substance of the distinction is whether the Curing Statute applies. The Court finds the reasoning of *In re Knight* and *In re Blackmon* applies to attestation of official witnesses in cases, like this one, where the Curing Statute does not apply.

## V.    **MOTION TO SUBSTITUTE**

Caliber also moves to substitute Freedom Mortgage Corporation as defendant pursuant to Federal Rule 25(c), made applicable by Bankruptcy Rule 7025, because Caliber transferred the Security Deed to Freedom Mortgage.  Trustee opposes the substitution because he has different remedies against Caliber and Freedom Mortgage, and Freedom Mortgage may have different defenses than Caliber pursuant to 11 U.S.C. § 550.

Federal Rule 25(c) provides, "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  The Court has discretion whether to substitute a party. *See, e.g., Nat'l Ind. Theatre Exhibitors, Inc. v. Buena Vista Distr. Co.*, 748 F.2d 602, 610 (11th Cir. 1984) (stating that the "decision whether to allow substitution is discretionary."); *Barker v. Jackson Nat. Life Ins. Co.*, 163 F.R.D. 364, 366 (N.D. Fla. 1995) (Motions under Rule 25(c) are "committed to the sound discretion of the trial court.").  Rule 25(c) "is not designed to create new relationships among the parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands."  *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000).

The Court will deny the Motion to Substitute without prejudice to Caliber's or Freedom Mortgage's ability to seek to join Freedom Mortgage as a defendant.  As Trustee points out, he may have remedies against both Caliber and Freedom Mortgage as initial and subsequent transferees pursuant to 11 U.S.C. § 550.  Caliber argues recovery from both would constitute an impermissible double-recovery, which may be true, but whether Trustee may recover from both is a separate question from whether Trustee is limited to pursue recovery from Freedom Mortgage only.  Whether Trustee is entitled to a monetary recovery from Caliber or a recovery of the property

from Freedom Mortgage remains to be seen, but the Court declines to find that Trustee is precluded from seeking recovery from Caliber at this stage in the proceeding.[9]

Further, as Trustee again points out, Freedom Mortgage may have different defenses than Caliber pursuant to 11 U.S.C. § 550.  Caliber argues that Freedom Mortgage will not assert a good faith defense and will be represented by the same counsel.  Although the Court does not question counsel's veracity or sincerity, counsel currently represents only Caliber in this case, and the Court is not inclined to accept statements made in filings on behalf of Caliber as binding statements made on behalf of Freedom Mortgage.

## VI.    CONCLUSION

The Security Deed is defective for lack of attestation by an official witness.  The Closing Attorney's Affidavit does not comply with O.C.G.A. § 44-2-18 because the closing attorney did not attest the Security Deed.  The Closing Attorney's Affidavit is not itself an attestation of the Security Deed.  The Security Deed is avoidable by Trustee pursuant to 11 U.S.C. § 544.

IT IS ORDERED that Trustee's Motion for Partial Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Caliber's Cross-Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that the Motion to Substitute is DENIED.

The Clerk is directed to serve a copy of this Order on counsel of record for all parties in this adversary proceeding.

END OF DOCUMENT

---

[9] Trustee suggests he may prove unsuccessful on efforts to sell the home pursuant to 363(h), a point well-taken by the Court if a potential outcome is the sale of a non-debtor's interest in a home that leaves a deficiency claim on an unsecured note due to a mistake by a lender or its closing attorney.